UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-00852-AH-(MAAx) | Date | August 17, 2026 |
| Title | *Electronic Theatre Controls, Inc. d/b/a ETC v. Elation Lighting, Inc.* | | |

Present: The Honorable Anne Hwang, United States District Judge

| | |
|---|---|
| Yolanda Skipper | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: CLAIM CONSTRUCTION ORDER**

Plaintiff Electronic Theatre Controls, Inc. ("ETC" or "Plaintiff") brought this action against Elation Lighting, Inc. ("Elation" or "Defendant"), alleging infringement of U.S. Patent Nos. 8,593,074 ("the '074 Patent"); 11,240,898 ("the '898 Patent"), and 11,849,519 ("the '519 Patent") (collectively, the "Asserted Patents"). *See generally*, Complaint, Dkt. No. 1. The parties dispute the meaning of several claim terms in the Asserted Patents. They submitted a Joint Claim Construction and Prehearing Statement. *See* Dkt. No. 41. The parties also filed the following claim construction briefs and supporting documents:

- Plaintiff's Opening Claim Construction Brief (Dkt. No. 47);
- Defendant's Responsive Claim Construction Brief (Dkt. Nos. 50, 49-1 (sealed));
- Plaintiff's Reply Claim Construction Brief (Dkt. No. 55);
- Defendant's Tutorial Video (Dkt. No. 56);
- Plaintiff's Tutorial Video (Dkt. No. 58).

The Court construes the disputed terms as stated herein.

# I. BACKGROUND

The Asserted Patents generally relate to lighting techniques.

## A. The ’074 Patent

The ’074 Patent, titled, “Systems and Methods for Controlling an Output of a Light Fixture,” claims priority to an application filed on January 12, 2011. It relates to systems and methods for changing the colors of LEDs to mimic the behavior of incandescent lighting. *See* Dkt. No. 47 at 1; Dkt. No. 49-1 at 3. Incandescent lights change color from cool to warm as they dim but LEDs do not. *Id.* However, the color of the LEDs can be determined and matched to appear like incandescent lighting by adjusting the light output based on a target. *Id.*

Claim 1 of the ’074 Patent is exemplary for claim construction purposes and discloses:

> 1. A method of controlling an output of a light fixture, the light fixture including four or more light sources, the method comprising:
> receiving a first input parameter corresponding to a first color point within a color space;
> receiving a second input parameter associated with a desired intensity for the first color point;
> determining ***a white point*** based on a relationship between the second input parameter and ***the color temperature*** of a black-body radiator, ***the white point*** corresponding to a second color point within the color space;
> selecting ***a color temperature*** transform based on ***the white point***;
> ***calculating*** a third color point within the color space based on the color temperature transform, the color temperature transform defining a relationship between the first color point and the third color point, the third color point being different than the first color point, and the third color point being different than the second color point;
> determining a respective light source output value for each of the four or more light sources based on the third color point; and
> driving each of the four or more light sources at the respective light source output value to produce the output of the light fixture.

’074 Patent, Claim 1 (emphasis added to show disputed terms).

### B. The ’898 and ’519 Patents

The ’898 and ’519 Patents, both titled, “Systems, Methods, and Devices for Influencing Spectral Content of a Light Output,” claim earliest priority to a provisional application filed on February 12, 2020. The ’519 Patent is a continuation of the application that issued as the ’898 Patent. The ’898 and ’519 Patents share a common specification. The ’898 and ’519 Patents are directed to systems and methods for changing how light appears including effects such as hue shift, chroma shift, saturation level, and brightness, without changing the color of the light. *See* Dkt. No. 47 at 2-3; Dkt. No. 49-1 at 15. This is a concept known in the art as metameric control. *Id.*

Claim 1 of the ’898 Patent is exemplary for claim construction purposes and discloses:

1. A method for control of a light fixture, the method comprising:
energizing the light fixture to produce a first light output with a first chromaticity and a first spectral power distribution;
receiving a ***user input representative of a desired adjustment of a lighting effect***;
***generating a target spectrum*** based on the user input; and
energizing the light fixture ***to produce a second light output with the first chromaticity*** and a second spectral power distribution, ***the second power distribution approximates the target spectrum***.

’898 Patent, Claim 1 (emphasis added to show disputed limitations).

## II. LEGAL STANDARD

### A. Claim Construction

Claim construction is “exclusively within the province of the court.” *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). It is “a question of law in the way that we treat document construction as a question of law,” with subsidiary fact-finding reviewed for clear error. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325 (2015). The claim language itself is the best guide to the meaning of a claim term because the claims define the scope of the claimed invention. *See Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1382 (Fed. Cir. 2014); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). A “person of

ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent." 415 F.3d at 1313. Thus, claims "must be read in view of the specification," which is "always highly relevant to the claim construction analysis." *Id.* at 1315 (internal quotations omitted).

Claim terms typically have their plain and ordinary meaning. In some cases, however, the specification defines the term to mean something else. "[A] claim term may be clearly redefined without an explicit statement of redefinition," so long as a person of skill in the art can ascertain the definition by a reading of the patent documents. *Phillips*, 415 F.3d at 1320; *see also Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1364 (Fed. Cir. 2016). Although claims are read in light of the specification, limitations from the specification must not be imported into the claims. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009). "[T]he line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." *Phillips*, 415 F.3d at 1323.

"Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Phillips*, 415 F.3d at 1314 (internal quotations and citation omitted). "Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." *Id*. (internal quotations and citation omitted). Sometimes, the use of "technical words or phrases not commonly understood" may give rise to a factual dispute, the determination of which will precede the ultimate legal question of the significance of the facts to the construction "in the context of the specific patent claim under review." *Teva*, 574 U.S. at 346. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. "In such circumstances, general purpose dictionaries may be helpful." *Id.*

### B. Indefiniteness

A patent's specification must conclude "with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b); *see also* 35 U.S.C. § 112 ¶ 2 (2006). In order to meet this "definiteness" requirement, "a patent's claims, viewed in light of the specification and prosecution history, [must] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). Patents must be precise enough to "appris[e] the public of what is still open to them," while recognizing that absolute precision is unobtainable given "the inherent limitations of language." *Id.* at 899, 909-10 (quoting *Markman*, 517 U.S. at 373).

Patents are "presumed valid under 35 U.S.C. § 282." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377 (Fed. Cir. 2015). "[C]onsistent with that principle, a fact finder is instructed to evaluate . . . whether an invalidity defense has been proved by clear and convincing evidence." *Id.* (quoting *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 111 (2011)) (emphasis added, brackets removed); *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1345 (Fed. Cir. 2007) ("Because a patent is presumed to be valid, the evidentiary burden . . . is one of clear and convincing evidence.").

## III. DISCUSSION

### A. Agreed Upon Claim Terms

The parties have not agreed upon any constructions.

### B. Disputed Claim Terms

#### 1. <u>"the color temperature" ('074 Patent, Claims 1 and 14)</u>

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "the temperature of an ideal black-body radiator that radiates light of a comparable hue, and is identified in units of absolute temperature, or the appearance of | Indefinite. |

| | |
|---|---|
| light emitted by a source that describes whether the light looks warm or cool." | |

Defendant argues that "the color temperature" is indefinite because it lacks antecedent basis in the claims. Dkt. No. 49-1 at 9.

A claim term is not *per se* indefinite because it lacks antecedent basis. *In re Downing*, 754 F. App'x 988, 996 (Fed. Cir. 2018). Rather, courts consider whether a POSA would understand the scope of the claim with reasonable certainty. *Id.*; *see also Nautilus*, 572 U.S. at 901.

Here, Claim 1 of the '074 Patent discloses, "the color temperature of a black-body radiator." '074 Patent, Claim 1. "[T]he color temperature" could refer to one specific temperature or all possible temperatures that the black-body radiator could have. To the extent "the color temperature" refers to a specific temperature, Defendant argues that a POSA would not know which temperature. Dkt. No. 49-1 at 9.

The specification provides guidance regarding the meaning of the color temperature. It discloses that, "color temperature is a convenient way to describe the output of an incandescent light bulb or other similar white-light light sources." '074 Patent at 1:23-26. It explains that, "[t]he color temperature of a white-light light source (e.g., an incandescent bulb) corresponds to the temperature of an ideal black-body radiator that radiates light of a comparable hue . . . ." *Id.* at 1:9-12. It further explains that, "[t]he light output by an incandescent light bulb is thermal radiation and approximates an ideal black-body radiator. The color temperatures associated with the incandescent bulb follow the Planckian locus through a particular color space . . . ." *Id.* at 1:17-21; *see also* FIG. 3 (showing color temperatures for an ideal black-body radiator on the Planckian locus).

The specification discloses an embodiment including a control interface with a white point color temperature control section having a white point input portion. *See id*. at 5:21-6:9. The full claim limitation at issue discloses, "determining a white point based on a relationship between the second input parameter and the color temperature of a black-body radiator." *Id.*, Claim 1. Plaintiff argues that given the disclosure in the specification and this claim language, a POSA would understand that "the color temperature" refers to the specific white point color temperature input as opposed to any color temperature on the Planckian locus.

Dkt. No. 55 at 4. This is not persuasive. The claim does not disclose a specific white point color temperature input. Rather, the claim discloses determining a white point based on the color temperature of the black-body radiator and another input. It is unclear how the white point input would clarify what the color temperature is when the white point determination is instead based on the color temperature.

At the hearing, Plaintiff argued that the claim is not indefinite even though it omits the step of setting a color temperature. Plaintiff cited *Smith & Nephew, Inc. v. Ethicon, Inc.*, 276 F.3d 1304 (Fed. Cir. 2001). *Smith* stands for the proposition that "[a] claim is not defective when it states fewer than all of the steps that ***may*** be performed in practice of an invention." 276 F.3d at 1311 (emphasized). Here, the step of setting a color temperature is necessary to understand what "the color temperature" means in the context of the claims. Thus, the step is not optional. Without it, "the color temperature" lacks antecedent basis.

For the foregoing reasons, this term renders the claims indefinite. A finding that this term renders Claim 1 indefinite moots the parties' claim construction disputes concerning terms 2-6, discussed below..

### 2. "the second spectral power distribution approximates the target spectrum" / "the second spectral power distribution approximating the target spectrum" ('898 Patent, Claims 1, 18, and 20; '519 Patent, Claims 1, 11, and 19)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "the second spectral power distribution approximates a predetermined ideal spectral power distribution." | Indefinite. |

The parties dispute whether "approximates" lacks objective bounds and thus renders the claims indefinite. *See* Dkt. No. 47 at 14; Dkt. No. 49-1 at 21.

"Words of degree are not 'inherently indefinite,' but 'the court must determine whether the patent provides some standard for measuring that degree.'" *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1284 (Fed. Cir. 2023)

(quoting *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015)). Numerical precision is not required. *Id.* at 1285 (finding a term sufficiently definite where specification disclosed that an elongate member "must be sufficiently long to permit [users] having very different sized hands[] to operate the member."); *see also Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1345–46 (Fed. Cir. 2018) (finding term "substantially straight" not indefinite where the specification clearly disclosed straight as being relative to curved portions). Still, "the patent [must] provide sufficient guidance to give one of ordinary skill reasonable certainty as to the scope of the claims." *Ironburg*, 64 F.4th at 1285. Entirely subjective terms render the claims indefinite. *Intell. Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1381 (Fed. Cir. 2018); *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed. Cir. 2005). Thus, terms like "approximate" are not necessarily indefinite. Rather, the question is whether the patent provides sufficient guidance for a person having ordinary skill in the art to understand the meaning of "approximate."

Here, the specification discloses that, "spectral match . . . refer[s] to the application of an optimization procedure for spectrally matching the output composite light spectrum of the composite light source to a given target spectrum." '898 Patent at 2:49-54. It explains that, "the spectral match provided by the composite light source will not necessarily be identical to the target spectrum . . . . [b]ut, it will be optimally close or as close as possible according to given system constraints." *Id.* at 2:54-58; *see also id*. at 9:13-22 (referencing "idealized target output spectrum" and a "light fixture's best ability to match the target output light spectrums") and 13:31-34 ("the second spectral power distribution . . . will depend on the type of light fixture utilized to create the target spectrum.") Thus, "approximate," here means the best possible spectral match given the constraints of the light fixture being used.

Numerical precision is not required. Qualitative guidance related to constraints may be sufficient so long as a POSA would understand how to apply the guidance. *Id.* (citing *Ironburg* 64 F.4th at 1285). Here, the specification provides some discussion tying "approximate" to constraints associated with light fixtures.[1] Though the discussion is limited, the extrinsic evidence shows that a

[1] At the hearing, counsel for Defendant argued that the guidance cited from the specification here does not appear in the provisional application. Counsel argued this issue affects the determination of the priority date for the asserted claims. At the *Markman* stage, the Court declines to resolve any disputes pertaining to the

POSA would understand how to apply this guidance to approximate the spectral match, despite a lack of disclosure of exact tolerances. Deposition of Michael Wood ("Wood Dep. Tr. II"), Dkt No. 47-1 at 158:7-160:11 (pp. 324-26 of PDF) (discussing how FIGs. 8A, 8B, 8C show examples of approximate spectral matching that a POSA would understand how to accomplish with mathematical techniques known in the art); Deposition of Kevin William Houser, Ph.D. ("Houser Dep. Tr."). Dkt. No. 47-1 at 184:1-6 (p. 216 of PDF) ("I think that 'approximately' is a word that is used to describe spectral characteristics of light, preferably followed by a tolerance.")

For the foregoing reasons, Defendant has not shown that this term is indefinite by clear and convincing evidence. Plain and ordinary meaning applies.

### 3. **"to produce a second light output with the first chromaticity" ('898 Patent, Claims 1, 18, and 20; '519 Patent, Claims 1, 11, and 19)**

| **Plaintiff's Proposed Construction** | **Defendant's Proposed Construction** |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "the second light output has the first chromaticity as perceived by human vision." | "to produce a second light output with exactly the same chromaticity as the first light output" |

The parties agree that "the first chromaticity" is the same as "a first chromaticity" disclosed earlier in the claims. *See* Dkt. No. 55 at 7; Dkt. No. 49-1 at 20. However, they dispute whether these chromaticities may differ based on an acceptable tolerance caused by variations in human visual perception or whether they must be exactly the same. *Id.*

One object of the invention disclosed in the '898 Patent is to "alter how [an] object appears [to a user] without altering the chromaticity of the light output." '898 Patent at 2:1-2; *see also id.* at 7:49-52 ("[T]he illuminated object 103 may appear to an observer (i.e., a human or camera) to be different colors and can be adjusted by a user while holding the output light chromaticity constant.") and 9:35-

priority date. The parties may brief the issue, if necessary, at the dispositive motion stage.

38 (same). Thus, consistent with the purpose of the invention, the chromaticity appears to be a set parameter that is not necessarily based on human visual perception.

Still, similar to the disputed claim term above, the specification discloses some level of approximation related to chromaticity matching:

> Similarly, the terms chromaticity match, chromaticity matching, constant chromaticity, fixed chromaticity, and the like refer to the application of an optimization procedure for matching CIE chromaticity coordinates of the output composite light source spectrum to CIE chromaticity coordinates of a given target spectrum. It should be understood that the chromaticity match provided by the composite light source will not necessarily be identical to the target spectrum. But, it will be optimally close or as close as possible according to given system constraints.

*Id.* at 2:58-67. However, the claim language captures this type of approximation only for the spectral power distribution, not for the chromaticity. The language in the claim for chromaticity is identical even though elsewhere the claim uses terms of degree, like "approximate." '898 Patent, Claim 1 (disclosing, "energizing the light fixture to produce a first light output with a first chromaticity," and "energizing the light fixture to produce a second light output with the first chromaticity").[2] Though, "[c]laim differentiation is a guide, not a rigid rule," it does not appear that the claim language here intended to capture a tolerance or distinction for chromaticity due to visual perception. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991). In this case the claim differentiation presumption supports Defendant's position that the chromaticities disclosed in claim 1 are set parameters that do not differ by a tolerance based on human visual perception.

For the foregoing reasons, Defendant's proposed construction is more consistent with the claim language and specification. To the extent "exactly"

---

[2] Though a term of degree is not indefinite just because it is based on visual perception, here, chromaticity is not modified by any term of degree. *See Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1378 (Fed. Cir. 2017).

eliminates any acceptable tolerance,[3] which would not be correct, the Court instead construes "with the first chromaticity" to mean "with the same chromaticity as the first light output."

**4. "generating a target spectrum" / "generate a target spectrum" ('898 Patent, Claims 1, 18, and 20; '519 Patent, Claims 1, 11, and 19)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "producing / produce a predetermined ideal spectral power distribution." | "creating, calculating, or producing a target spectral power density" |

The parties dispute whether "generate" potentially encompasses something other than creation, calculation, and/or computation of a target spectrum. *See* Dkt. No. 47 at 19; Dkt. No. 49-1 at 22. Here, the specification does not disclose any special definition or other material that warrants limiting the term "generate" to only creating and calculating. The specification discloses that generating includes creating and calculating in certain embodiments. *See* '898 Patent at 13:18-28 (disclosing that the target spectrum is retrieved from a look-up table or calculated using various methods). The embodiments disclosed in the specification should not be read to limit the claims. *Abbott*, 566 F.3d at 1288. Plain and ordinary meaning applies.

**5. "input being related to an adjustment of a lighting effect" / "input related to an adjustment of a lighting effect" ('898 Patent, Claims 1, 18, and 20; '519 Patent, Claims 1, 11, and 19)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|

[3] Even adopting a mathematical definition, based on a chromaticity diagram as opposed to human perception, there would still be some acceptable tolerance depending on the sensitivity of the diagram. *See* Deposition of Kevin William Houser, Ph.D. ("Houser Dep. Tr."), Dkt. No. 50-11 at 108:2-24.

| | |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "a command to adjust the lighting effect." | Indefinite. |

Defendant appears to have withdrawn its dispute as to this claim term. Dkt. No. 47 at 19-20. Plain and ordinary meaning applies.

### 6. **"input representative of a desired adjustment of a lighting effect" / "input related to a desired adjustment of a lighting effect" ('898 Patent, Claim 1; '519 Patent, Claim 11)**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "command that represents a wanted adjustment of the lighting effect." | Indefinite. |

The parties dispute whether "desired" is subjective and thus renders the claims indefinite. *See* Dkt. No. 47 at 20; Dkt. No. 49-1 at 23.

The full claim limitation at issue reads, "receiving a user input representative of a desired adjustment of a lighting effect." '898 Patent, Claim 1. Though terms like "desired" may render claims indefinite when they are entirely subjective, the context matters. Here, practicing the claims at issue does not depend on what would be considered desirable by a user. Rather, the claim limitation discloses that information indicating a user has selected a lighting effect adjustment is received. "Desired," in this context, indicates that the user has made a selection. In other words, "desired," as used in Claim 1 means "selected," not "preferred." In this context, Defendant's case law related to terms of degree is not persuasive. *Colt Int'l Clothing, Inc. v. Quasar Sci. LLC*, 2025 WL 2402797, at *15 (D. Del. Aug. 19, 2025) (finding claim term not indefinite because, "the claim in dispute is not directed to providing a skin appearance that would be aesthetically pleasing to a viewer, which would be a subjective determination," but rather, "the claim allows the user to decide which skin appearance he or she seeks").

For the foregoing reasons, Defendant has not shown that this term is indefinite by clear and convincing evidence. Plain and ordinary meaning applies.

**7. <u>"the lighting effect . . . of the light output" / "the lighting effect . . . of the light reflected by an object illuminated by the light output" / "the lighting effect is the relative luminance of an object illuminated by the light output" ('898 Patent, Claims 2, 8, and 15-17; '519 Patent, Claims 10 and 18)</u>**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "the lighting output's lighting effect." | Indefinite. |

Defendant argues the term at issue is indefinite because "the light output" lacks a clear antecedent in the independent claim from which the claims at issue depend. Dkt. No. 49-1 at 24. Specifically, Defendant argues that "the light output" could be either "a first light output" or "a second light output" and that a user would not know which one is "the light output." *Id.* Plaintiff argues that there is no confusion because "the light output" refers to both the first and second light outputs, which necessarily have the same effect that is being adjusted. Dkt. No. 47 at 22; Dkt. No. 55 at 11.

Here, Claim 1 of the '898 Patent discloses, "energizing the light fixture to produce a first light output with a first chromaticity and a first spectral power distribution" and "energizing the light fixture to produce a second light output with the first chromaticity and a second spectral power distribution . . . ." '898 Patent, Claim 1. Dependent Claim 2, at issue here, discloses, "[t]he method of claim 1, wherein the lighting effect is the TM-30 $R_g$ value of the light output." *Id.*, Claim 2. Dependent Claims 8, and 15-17 are similar in scope. The '519 Patent claims disclose similar material.

Whether "the light output" refers to the first or second light output is not a material issue. The dependent claims at issue narrow the scope of Claim 1 by disclosing a particular lighting effect. *See id.*, Claim 2. The dependent claims

disclose, "the light output," only because the effect that is being adjusted is necessarily part of a light output. The effect that is being adjusted would need to be present in both the first light output (pre-adjustment) and the second light output (post-adjustment) in order to be adjusted. Thus, though the claim drafting could have been more precise, Plaintiff is correct that "the light output" refers to both the first and second light outputs, since both outputs include the effect that is being adjusted.

For the foregoing reasons, Defendant has not shown that this term is indefinite by clear and convincing evidence. Plain and ordinary meaning applies.

### 8. "the TM-30 . . . value" ('898 Patent, Claims 2 and 15-17; '519 Patent, Claims 10 and 18)

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning.<br><br>Alternatively, "TM-30 is the Illumination Engineering Society Technical Memorandum 30" | Indefinite. |

Defendant argues that this term is indefinite because there are different versions of the TM-30[4] that include differing calculations for the claimed parameters, such as $R_f$, $R_g$, $R_{cs,hl}$, and $R_{f,h,l}$. Dkt. No. 49-1 at 25.

Here, the claims refer to parameters that are disclosed in both the TM-30-15 and TM-30-18. The claims do not require computation of the disclosed parameters. They require only selection of these parameters as adjustable lighting effects. Further, even if the claims did require calculation, there is a limited universe of possible calculations because there are a limited universe of TM-30 versions. A POSA would be aware of the various versions and would have sufficient knowledge to select an appropriate computation. This term does not lack objective bounds.

[4] TM-30 is the Illumination Engineering Society ("IES") Technical Memorandum ("TM") 30. Defendant represents that there are both 2015 (TM-30-15) and 2018 (TM-30-18) versions of the TM-30. Dkt. No. 49-1 at 25.

For the foregoing reasons, Defendant has not shown that this term is indefinite by clear and convincing evidence. Plain and ordinary meaning applies.

## IV. CONCLUSION

For the reasons stated, the Court construes the disputed terms as follows:

| Term | Court's Construction |
|---|---|
| "the color temperature" | Indefinite. |
| "white point" | Moot. |
| "calculate" / "calculating" | Moot. |
| "Planckian locus" | Moot. |
| "the output of a light fixture" | Moot. |
| "substantially lies on the Planckian locus" | Moot. |
| "the second spectral power distribution approximates the target spectrum" / "the second spectral power distribution approximating the target spectrum" | Not indefinite. Plain and ordinary meaning. |
| "to produce a second light output with the first chromaticity" | "to produce a second light output with the same chromaticity as the first light output" |
| "generating a target spectrum" / "generating a target spectrum" | Plain and ordinary meaning. |
| "input being related to an adjustment of a lighting effect" / "input related to an adjustment of a lighting effect" | Plain and ordinary meaning. |
| "input representative of a desired adjustment of a lighting effect" / "input related to a desired adjustment of a lighting effect" | Not indefinite. Plain and ordinary meaning. |
| "the lighting effect . . . of the light output" / "the lighting effect . . . of the light reflected by an object illuminated by the light output" / "the lighting effect is the relative luminance of an object illuminated by the light output" | Not indefinite. Plain and ordinary meaning. |

| | |
|---|---|
| "the TM-30 . . . value" | Not indefinite. Plain and ordinary meaning. |

**IT IS SO ORDERED.**